IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CALIFORNIA CASUALTY GENERAL INSURANCE COMPANY OF OREGON,  )<br><br>Plaintiff,  )<br><br>vs.  )<br><br>MATTHEW NELSON, et al.,  )<br><br>Defendants.  ) | Case No. 13-1113-CV-W-ODS |

## ORDER AND OPINION GRANTING
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pending is Plaintiff's Motion for Summary Judgment. One of the Defendants, Matthew Nelson, has opposed Plaintiff's request and has also sought summary judgment in his favor. The Court concludes the uncontroverted facts demonstrate Plaintiff is entitled to judgment as a matter of law. Accordingly, Plaintiff's motion (Doc. # 25) is granted and Nelson's counter-motion is denied.

## I. BACKGROUND

Plaintiff initiated this declaratory judgment action against (1) Father Doe, in his capacity as parent and next friend for John Doe (collectively, "the Does"), and (2) Nelson. Plaintiff seeks a declaration that it is not obligated to defend Nelson in a suit filed against him by the Does in Jackson County Circuit Court.

The Does' suit alleges Nelson was a second grade teacher in the Grain Valley School District ("the School District") and during the 2011-12 school year John Doe was one of Nelson's students. Nelson pleaded guilty in state court to child molestation,

statutory sodomy and attempted child molestation.[1] The state-court suit asserts claims against Nelson, the School District, and various officials from the School District.

Nelson was insured under a homeowner's insurance policy issued by Plaintiff. Plaintiff has offered to defend Nelson under a reservation of rights, preserving its ability to contest its obligations to defend or indemnify him. In this suit, Plaintiff seeks a declaration that (1) it has no duty to defend Nelson in the state suit and (2) it has no duty to indemnify Nelson from any judgment that might be imposed in the state suit.

### A. The Underlying State Court Suit

The Petition filed by the Does in state court ("the Petition") remains their operative pleading in that lawsuit. As relevant to this suit, the Facts Common to All Counts ("the Common Facts") aver that the following events occurred during the 2011-12 school year:

> 33. During the fall of 2011, defendant Nelson inappropriately and unlawfully touched John Doe in a sexual manner during school hours and on school property.
>
> \* \* \*
>
> 36. Defendant Nelson repeatedly rubbed John Doe's shoulders, back, buttocks, and penis. Defendant Nelson touched John Doe both on the outside of his clothes and on the inside of his clothes.
>
> 37. Defendant Nelson touched John Doe's genitalia and buttocks on approximately seven to eight different occasions.
>
> 38. John Doe, a male of less than eight (8) years of age, was intimidated, frightened, harassed and otherwise manipulated by Defendant Nelson both by his words and his actions, and had no choice but to be subjected to his repeated and ongoing physical and sexual assaults.[2]

In addition, paragraph 92 describes a Charge of Discrimination the Does filed with the Missouri Commission on Human Rights. The Charge is attached as an exhibit to the

---

[1] The Record does not clarify whether any of the charges to which Nelson pleaded guilty related to John Doe.

[2] A substantially similar allegation is contained in paragraph 42.

Petition and alleges that John Doe "was sexually abused by [Nelson] on school property and during school hours." Finally, there are numerous allegations to the effect that Nelson acted on school property in his capacity as a teacher. E.g., Petition, ¶¶ 7, 24, 32-33, 39, 41, and 83.

The Petition contains eleven counts, and Nelson is a defendant in eight of them. Each of the individual counts begins by reincorporating all previous allegations, including those set forth above. The counts naming Nelson as a defendant, and relevant allegations contained therein are as follows:

Count I – Sexual Harassment in violation of the Missouri Human Rights Act. In addition to incorporating the Common Facts set forth above, Count I alleges "John Doe was subjected to sexual harassment and sexual assault and battery by a teacher while attending school, during school hours and on school premises." Petition, ¶ 101.

Count IV – Negligence Per Se. This count is premised on Nelson's failure to report, as required by section 167.117 of the Revised Missouri statutes, his own prior acts of sexual assault. Petition, ¶¶ 136, 141. The statute requires school officials to report acts of sexual assault committed against pupils or school employees. Nelson's failure to report his prior sexual assaults is alleged to be the direct and proximate cause of the injuries John Doe suffered as a result of the acts described in the Common Facts. Petition, ¶ 142.

Count VI – Negligence. Here, the Does allege Nelson breached his duty to use the ordinary degree of skill and care employed by reasonable or careful teachers by engaging in the acts described in the Common Facts. Petition, ¶¶ 157-58.

Count VII – Negligent Infliction of Emotional Distress. This Count incorporates the Common Facts as well as the duties alleged in Count VI. In addition, this count alleges that Nelson "knew or should have known that continuous sexual abuse by a teacher involved an unreasonable risk of causing emotional distress for John Doe." Petition, ¶ 166.

Count VIII – Assault and Battery. This count incorporates the Common Facts and further posits that the conduct described therein "caus[ed] the immediate apprehension of physical contact in John Doe" and constituted "offensive and/or harmful physical contact with John Doe." Petition, ¶¶ 170-72

Count IX – Childhood sexual abuse brought pursuant to section 537.046 of the Revised Missouri Statutes.³ This statute creates a cause of action for anyone under the age of eighteen who is the victim of an act that violates various criminal provisions. In this case, Count VIII specifies that it is based on section 566.090, which defines the crime of first degree sexual misconduct as "purposely subject[ing] another person to sexual contact without that person's consent."

Count X – Intentional Infliction of Emotional Distress. After incorporating the Common Facts, Count X alleges "Nelson's conduct was intended to cause John Doe severe emotional distress, or reflected a reckless indifference to the likelihood that it would cause John [D]oe severe emotional distress." Petition, ¶¶ 185, 187.

Count XI – False Imprisonment. In addition to incorporating the Common Facts, Count XI alleges that "[o]n multiple occasions and while John Doe was a student of defendant Nelson, defendant Nelson unlawfully and involuntarily detained and restrained John Doe against his will." Petition, ¶ 193.

### B. The Insurance Policy

#### *1. The "Main" Policy*

Coverage E of the policy agrees to (1) pay the limit of liability for damages for which Nelson is legally liable and (2) provide a defense to Nelson in the event "a claim or a suit is brought against" Nelson "for damages because of 'bodily injury'" that are "caused by an 'occurrence' . . . ." Coverage F states Plaintiff "will pay the necessary medical expenses" arising from "an accident causing 'bodily injury' that are (among other things) "caused by the activities of an 'insured.'" Elsewhere, the policy defines an "occurrence" as "an accident . . . which results, during the policy period, in" bodily injury or property damage.

A list of exclusions immediately follows Coverages E and F. The following exclusions are relevant to this suit:

---

³The Petition actually invokes section 537.045, but this appears to be a typographical error.

4

**Exclusion E.1**, which states that Coverages E and F do not apply to "'[b]odily injury' or 'property damage' which is expected or intended by an 'insured' even if the resulting 'bodily injury' or 'property damage' [i]s of a different kind, quality, or degree than initially expected or intended; or [i]s sustained by a different person . . . than initially expected or intended."

**Exclusion E.2**, which excludes coverage for damages "arising out of or in connection with a 'business' . . . engaged in by an 'insured', whether or not the 'business' is owned or operated by an 'insured' or employs an 'insured'." The term "business" is defined to include "[a] trade, profession or occupation engaged in on a full-time, part-time or occasional basis."

**Exclusion E.7**, which states that Coverages E and F do not apply to "'[b]odily injury . . . arising out of sexual molestation, corporal punishment or physical or mental abuse . . . ."[4]

## 2. The Educator Endorsement

The policy contains what has been described as an "Educator Endorsement," which extends Coverages E and F to cover "acts and omissions within the course and scope of [Nelson's] employment" as a teacher. The Educator Endorsement provides excess coverage, and it specifies that for its coverage to apply Nelson "must be covered by collectible underlying primary insurance." If the endorsement's conditions are met, it effectively amends Exclusion E.2 (discussed above) by declaring that Exclusion E.2 does not apply to any damages "arising out of or in connection with [Nelson's] employment by a 'school'."

The endorsement incorporates all of the other previously-mentioned exclusions. Some of them are modified, but not in ways that matter to this suit. The endorsement also has some additional exclusions, one of which is relevant here: the endorsement does not apply to any "criminal act(s) or any acts forbidden by statute or local school board policy."

---

[4]There is also an endorsement excluding coverage for punitive damages, but there is no need to discuss this exclusion in light of the Court's ruling in this matter.

5

## II. DISCUSSION

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Wierman v. Casey's Gen. Stores, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### A.

Plaintiff's suit involves two distinct duties an insurer owes to its insured: the duty to defend and the duty to indemnify. "The duty to defend is broader than the duty to indemnify." McCormack Baron Mgt. Servs., Inc. v. American Guarantee & Liability Ins. Co., 989 S.W.2d 168, 170 (Mo. 1999) (en banc). "The duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint. If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend." Interstate Bakeries Corp. v. OneBeacon Ins. Co., 686 F.3d 539, 542 (8th Cir. 2012) (quoting McCormack Baron, 989 S.W.2d at 170-71). In addition, the insurer is charged with knowledge of facts that demonstrate

the possibility of coverage if those facts are known or are reasonably ascertainable. E.g., Truck Ins. Exchange v. Prairie Framing, LLC, 162 S.W.3d 64, 79 (Mo. Ct. App. 2005); Standard Artificial Limb, Inc. v. Allianz Ins. Co., 895 S.W.2d 205, 210 (Mo. Ct. App. 1995). "To extricate itself from a duty to defend the insured, the insurance company must prove that there is *no possibility* of coverage." Kirk v. Continental Western Ins. Co., 123 S.W.3d 259, 264 (Mo. Ct. App. 2003) (citing McCormack Baron, 989 S.W.2d at 170) (emphasis supplied); see also Brand v. Kansas City Gastroenterology & Hepatology, LLC, 414 S.W.3d 546 , 552-53 (Mo. Ct. App. 2013). If there is any possibility of coverage – no matter how unlikely that possibility may be – the duty to defend persists.

"The duty to indemnify is determined by the facts as they are established at trial or as they are finally determined by some other means, for example through summary judgment or settlement." McCormack Baron, 989 S.W.2d at 173. However, as the duty to defend is broader than the duty to indemnify, there can be no duty to indemnify if there is no duty to defend. E.g., Brand, 414 S.W.3d at 556; Kirk, 123 S.W.3d at 264; American States Ins. Co. v. Herman C. Kempker Const. Co., 71 S.W.3d 232, 236 (Mo. Ct. App. 2002); Superior Equipment Co. v. Maryland Casualty Co., 986 S.W.2d 477, 484-85 (Mo. Ct. App. 1998).

In considering the parties' competing arguments, the Court is mindful that the insured bears the burden of proving coverage exists, while the insurer bears the burden of proving that an exclusion to coverage applies. E.g., Interstate Bakeries, 686 F.3d at 543. The Court has incorporated the Does' and Nelson's arguments together and concludes there is no possibility of coverage, so there is no duty to defend. As there is no duty to defend, there is also no duty to indemnify.

Paragraphs 33, 36-38, and 92 of the Petition all describe intentional sexual misconduct that also constitutes sexual molestation. Paragraph 33 generally accuses Nelson of "unlawfully touch[ing] Jon Doe in a sexual manner," paragraphs 36 and 37 provide more graphic descriptions of Nelson's sexual conduct, and paragraph 38 describes Nelson's conduct as constituting a series of "physical and sexual assaults." Paragraph 92 incorporates the administrative charge filed with the MCHR, which describes Nelson as having "sexually abused" John Doe. These paragraphs describe

7

conduct that is excluded from coverage. All of these allegations are incorporated in each and every of the Does' claims against Nelsons. While damages arising from this conduct would constitute "bodily injury" arising from an occurrence, coverage is excluded (1) by Exclusion E.1 because such bodily injury would be expected, (2) by Exclusion E.7 because the "bodily injury" arises from "sexual molestation . . . or physical or mental abuse," and (3) by Exclusion E.2, because the Does repeatedly allege all of the misconduct occurred in connection with Nelson's duties as a teacher.

In carrying its burden of demonstrating Exclusion E.1 applies, Plaintiff need not demonstrate that Nelson "desired the particular result. It is sufficient that the consequences were substantially certain to follow from what [Nelson] intentionally did." State Farm Fire & Cas. Co. v. D.T.S., 867 S.W.2d 642, 644 (Mo. Ct. App. 1993); see also Cameron Mut. Ins. Co. v. Moll, 50 S.W.3d 329, 333 (Mo. Ct. App. 2001) ("an insured's subjective intent to cause injury can still be inferred from the nature and circumstances of the insured's intentional acts, especially when an intentional act results in injuries which are the natural and probable consequence of such an act."). Defendants' attempt to suggest ambiguity over whose perspective is applicable is unavailing: "an intent to harm [by the insured] is inferred from the very nature of the act of sexual abuse of a child. . . . The intent to molest is, by itself, the same thing as intent to harm." M.A.B. v. Nicely, 911 S.W.2d 313, 316 (Mo. Ct. App. 1995) (quotation omitted); see also D.T.S., 867 S.W.2d at 644. Nelson suggests the state court jury might find Nelson did not intend to injure John Doe, but the intent to injure is inferred as a matter of law. B.B. v. Continental Ins. Co., 8 F.3d 1288, 1290-91, 1296 (8th Cir. 1993) (holding the exclusion for injuries "intended or expected" applied even though trial court found the insured "subjectively did not intend to injure or harm" the minor victim). In fact, by 1997 Missouri courts were describing it as "well settled that sexual molestation is an intentional act falling within the 'intended or expected' exclusion in general liability insurance cases." American Family Mut. Ins. Co. v. Copeland-Williams, 941 S.W.2d 625, 628 (Mo. Ct. App. 1997).

Exclusion E.7 also applies because the Common Facts allege Nelson sexually molested John Doe and subjected him to physical and mental abuse. Defendants strive mightily to suggest that Nelson could be found liable for something less than sexual

8

molestation by positing scenarios that are not included in the Petition, such as a finding of liability based on hugging or kissing students in non-sexual manner. Nelson's Suggestions in Opposition at 9. This is not what the Does' suit is based on, and it is not what is described in paragraphs 33, 36-38 and 92.

Finally, Exclusion E.2 applies because the Common Facts allege Nelson's tortious conduct arose out of or was in connection with a business as defined in the policy. As noted earlier, Exclusion E.2 does not apply to the Educator Endorsement, but it does apply to the main policy and precludes coverage thereunder.

B.

Examining the Petition count by count does not alter the conclusion that the claims against Nelson are excluded by one or more of the aforementioned provisions. In some instances the issue is not disputed by Defendants.

Sexual Harassment (Count I) – The Common Facts demonstrate there can be no coverage for this claim because all three exceptions discussed above apply. The Charge of Discrimination is particularly relevant to Count I, given that it is a prerequisite for asserting a claim under the MHRA.

Negligence per se (Count IV) – The Does argue that a violation of the duty to report as required by section 167.117 can give rise to a negligence claim. This may be, and the Court expresses no opinion as to the claim's legal viability because that is not an issue before the Court. The real question is whether there is a possibility the claim might be covered by the policy, and the answer to this question is "no." The damages attributable to Nelson's failure to report arise from Nelson's ensuing intentional acts that also happen to constitute sexual molestation. Moreover, the failure to report and the ensuing misconduct occurred within the scope of Nelson's duties as a teacher. For these reasons, all three exceptions apply and conclusively demonstrate coverage cannot exist.

Negligence (Count VI) – This count also specifically reincorporates the Common Facts described earlier. Defendants place great emphasis on the fact that this claim asserts negligent, and not intentional, conduct. However, Missouri courts would not rely

9

on the label asserted but instead would look to the factual allegations supporting the claim. Simply entitling a claim as one for "negligence" will not avoid the inescapable conclusion that the claim arises from intentional/sexual misconduct. "A petition's mere mention of the word, 'negligence,' does not trigger a duty to defend where the factual allegations forming the 'negligence' claim demonstrate intentional conduct." Brand, 414 S.W.3d at 553; see also K.G. v. R.T.R., 918 S.W.2d 795 (Mo. 1996) (en banc).[5] The allegations supporting Count V – including the Common Facts – "'contradict any possibility that [Nelson's] conduct was mere negligence.'" State Farm Fire & Cas. Co. v. Caley, 936 S.W.2d 250, 254 (Mo. Ct. App. 1997) (quoting K.G., 918 S.W.2d at 800); see also Trainwreck West Inc. v. Burlington Ins. Co., 235 S.W.3d 33, 44-45 (Mo. Ct. App. 2007).

Negligent Infliction of Emotional Distress (Count VII) – Count VII depends on Count VI, so the Court's discussion applies in this context as well. In addition, the Does' attempt to "divide" the emotional distress component from the claims that Nelson acted intentionally is not allowed under Missouri law. E.g., Caley, 936 S.W.2d at 253-54 (rejecting "argument that even though [defendant's] conduct was intentional, it simply constituted negligent and not intentional infliction of emotional distress . . . .").

Assault and Battery (Count VIII) – The Court's preceding discussions explains why this count is excluded, particularly under Exclusions E.1 and E.7. The Does' reliance on the Eleventh Circuit's decision in Guideone Eliite Ins. Co. v. Old Cutler Presbyterian Church, Inc. is unpersuasive. Setting aside the fact that the case involves Florida law and not Missouri law, the case also presented sharply differentiated acts that were unrelated to the sexual misconduct. In particular, the perpetrator struck one victim in the head and forced her into a van and later held her daughter at knifepoint as part of a threat to induce the first victim to make an ATM withdrawal. 420 F.3d 1317, 1321-22, 1328 (11th Cir. 2005). These incidents were separate and apart from the rape

---

[5]In K.G., the plaintiff filed suit against her father alleging he touched her offensively/sexually when she was a child. The claim for battery was time-barred, so the plaintiff filed a claim for negligent infliction of emotional harm in an attempt to take advantage of the longer limitation period for negligence claims. The Missouri Supreme Court rejected the attempt, holding the "allegations of the pleadings before this Court do not support a claim that the father acted negligently."

and sexual assault. Here, the Petition does not allege any assaults or batteries other than those arising from and directly related to the sexual molestation. And, even if there were some "non-sexual" assaults or batteries, Exclusion E.1 would apply. Finally, the Petition alleges all of Nelson's conduct occurred in his capacity as a teacher, so Exclusion E.2 applies.

Childhood Sexual Abuse (Count IX) – The Court's preceding discussion explains why this claim is excluded, particularly under Exclusions E.1 and E.7.

Intentional Infliction of Emotional Distress (Count X) – The Court's preceding discussion explains why this claim is excluded under Exclusions E.1 and E.7. In addition, "where one's conduct amounts to the commission of one of the traditional torts, such as battery, and the conduct was not intended only to cause extreme emotional distress to the victim, the tort of intentional emotional distress will not lie, and recovery must be had under the traditional common law action." K.G., 918 S.W.2d at 799. Nelson's desire for personal gratification precludes any claim that he intended only to inflict extreme emotional distress on John Doe. Id. at 799-800.

False Imprisonment (Count XI) – Exclusion E.1 plainly applies given the nature of the tort. The Petition alleges John Doe's imprisonment and resulting damages were caused by the sexual molestation described in the Common Facts, so Exclusion E.7 also applies. Finally, as with all of the other claims, the Petition's allegations demonstrate Exclusion E.2 applies as well.

### C.

The Court's discussion to this point has focused on the policy's general provisions. The Educator Endorsement differs from the main policy in three important respects. First, it effectively removes Exclusion E.2. Second, it contains some additional provisions that function as exclusions. Third, it bestows only excess coverage, and it applies only if Nelson is "covered by collectible underlying primary insurance."

As a general matter, then, the Educator Endorsement cannot provide coverage because Nelson is not covered by collectible underlying primary insurance. It also does

11

not provide coverage because of Exclusions E.1 and E.7; the Court's prior discussion applies in this context as well. Finally, coverage under the Educator Endorsement for Counts I, IV, VIII, IX, and XI are barred by the additional provisions dictating that the Educator Endorsement does not apply to "bodily injury" arising from "criminal act(s) or any acts forbidden by statute or local school board policy."[6]

### III. CONCLUSION

There is no possibility of coverage for the claims asserted in the Petition. Missouri courts would look through the labels and recognize that the Does assert claims predicated on Nelson's sexual molestation or intentional acts. A plaintiff's ability to plead in the alternative does not alter this conclusion, because none of the allegations suggest anything other than intentional conduct. Moreover, the Does' Petition specifically alleges the misconduct occurred during and in the scope of Nelson's duties as a teacher, thereby triggering a third exclusion. The Educator Endorsement also does not provide coverage. Finally, as there is no possibility of coverage, there is no duty to defend or indemnify.

Plaintiff's Motion for Summary Judgment is granted. Nelson's request for summary judgment is denied.
IT IS SO ORDERED.

DATE: August 12, 2014

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[6] The Does' argument that this provision is ambiguous makes no sense. Their argument is that an ambiguity is created simply because the main policy does not exclude coverage for criminal acts, while the Educator Endorsement does. This is not an ambiguity. An ambiguity exists only if the policy language is reasonably and fairly open to different constructions. E.g., Macheca Transport Co. v. Philadelphia Indemnity Ins. Co., 649 F.3d 661, 669 (8th Cir. 2011). The fact that the main policy and the separate excess coverage provided by the Educator Endorsement have different terms does not mean either one of them is ambiguous – but that is the extent of the Does' argument.